IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH LASHUNNE JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:15cv598-CSC |
| ) | (WO) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act, and denied her claim for benefits. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. The case is now before the court

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance; it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## THE ISSUE

**A. Introduction.** The plaintiff Deborah Jackson ("Jackson") was 38 years old on the alleged date of onset, June 10, 2009, and has a high school education. (R. 32). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "disorders of the heart, disorders of the back, hypertension (HTN), and obesity." (R. 24). The ALJ concluded that Jackson did not meet or equal any of the listed impairments, specifically finding that

> [a]lthough the claimant has "severe" physical impairments, they do not meet the criteria of any listed impairment pursuant to the reference. No treating or examining physician has mentioned findings equivalent in severity to the criteria

3

of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment. Additionally the claimant has not alleged meeting or equaling any listing.

(R. 24).

The ALJ concluded that the plaintiff could not perform her relevant work as a nursery school attendant or sales clerk, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, also concluded that there were significant number of jobs in the national economy that the plaintiff could perform, and thus, Jackson was not disabled. (R. 32-34).

**B. Plaintiff's Claim.** The plaintiff's sole issue for the Court's review is whether "the Commissioner's decision should be reversed because the ALJ failed to consider whether Ms. Jackson's impairments meet or equal the requirements of Listing 4.04." (Doc. # 19 at 4). According to Jackson, the ALJ should have considered that her ischemic heart disease and coronary artery disease meet or equal Listing 4.04, and the failure to consider the Listing requires remand.

The Commissioner concedes that the ALJ did not explicitly discuss Listing 4.04 but argues that consideration of the Listing can be implied from the ALJ's discussion of the medical record. (Doc. # 20 at 4). More importantly, however, the Commissioner argues that the ALJ's failure to reference Listing 4.04 is harmless error because the medical evidence does not support a finding that Jackson's heart condition meets or equals Listing 4.04.

## DISCUSSION

Jackson asserts that she is presumptively disabled under Listing 4.04C1d because she

4

suffers from ischemic heart disease and coronary artery disease as demonstrated by an January 18, 2008 arteriography that showed "50 percent or more narrowing of at least two nonbypassed coronary arteries." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.04C1d.

In this case, the ALJ considered Jackson's heart condition and detailed her medical treatment. (R. 26-28).

> The objective medical evidence supports a finding of severe impairments related to the claimant's imperfection of the heart and hypertension (HTN). Prior to her alleged onset date, the claimant presented regularly to the Southeast Alabama Medical Center (Exhibits 1F - 3F). As early as 2003, the claimant was assessed with hypertension symptoms (Exhibit 1F/44-49). On February 24, 2007, after presenting to the Southeast Alabama Medical Center complaining of chest pains, the claimant was assessed with hypertension (Exhibit 1F/27 - 29).
>
> Referred for chest X-rays, Hugh Holloway, M.D., assessed the claimant's heart "at the upper limits of normal" (Exhibit 1F/33). Similarly, Computed Tomography (CT) scans of the claimant's chest indicated "no pulmonary embolus" but "were suspicious for left ventricular hypertrophy" (Exhibit 1F/34). On August 21, 2007, the claimant presented for a radiological examination (X-rays) and Julia Alexander, M.D., assessed the claimant with "probable mild pulmonary edema" (Exhibit 1F/16). However, Dr. Alexander also assessed the claimant with "no evidence of pulmonary embolus" and "no significant abnormality" (Exhibit 1F/17).
>
> On January 5, 2008, the claimant was admitted to the Southeast Alabama Medical Center Emergency Room (ER) for chest pains and severe hypertension (Exhibit 2F/7). Upon catheterization, the claimant was assessed with proximal 50% stenosis at the first diagonal and the right coronary artery had a distal 60% irregular lesion (Exhibit 2F/7, 19). Counseled about her medical noncompliance with her Clonidine regimen, the claimant was successfully treated with intravenous medications (Exhibit 2F/7). After her condition improved, she was discharged for home with several prescriptions (Exhibit 2F/7).
>
> From April 1, 2009, to February 5, 2010, the claimant was treated at the Southeast Cardiology Center (Exhibit 4F). Although the claimant was repeatedly advised to lose weight, the claimant's blood pressure was described as "better" and was evaluated at 120/28 and 150/98 in two separate visits Exhibit 4F/2-3).

> On July 14, 2011, the claimant returned for treatment at the Southeast Alabama Medical Center ER (Exhibit 6F). The claimant presented after feeling numbness in her right upper extremity as well as severe weakness down her right arm (Exhibit 6F/5). At admission, the claimant was diagnosed with a transient ischemic attack (Exhibit 6F/1). On July 15, 2011, the claimant submitted for a an (sic) echocardiogram Doppler study(Exhibit 6F/25 -38). Peter Rao, M.D. completed the study and described the claimant's left ventricle as grossly normal with systolic function and estimated ejection fraction at 55- 60% (Exhibit 6F/36). Worth noting, Dr. Rao described the claimant as having "significant interval improvement when compared to previous echocardiogram January 2008" but still with "moderate to severe concentric left ventricular hypertrophy"(Exhibit 6F/36).
>
> \*   \*   \*
>
> After a physical examination, Vishal Patal, M.D., diagnosed the claimant with a transient ischemic attack and coronary artery disease *secondary to a vasospasm from uncontrolled hypertension* (Exhibit 6F/7). Additionally, Dr. Patel noted that the claimant's last ejection fraction in fraction was at 25 - 30% in 2008 but the claimant *was not in congestive heart failure now but rather her condition was "related to uncontrolled blood pressure* (Exhibit 6F/8).
>
> On July 16, 2011, the claimant was discharged (Exhibit 6F/2). At discharge, the claimant was diagnosed with a transient ischemic attack, coronary artery disease, cardiomyopathy showing improved ejection fraction, hypertension, hyperlipidemia, obesity, and noncompliance with medications (Exhibit 6F/2). For treatment, the claimant was prescribed several medications (Exhibit 6F/2).
>
> \*   \*   \*
>
> On May 9, 2012, Nelson Gwinn, M.D., treated the claimant at Southeast Cardiology (Exhibit 11F). After the claimant complained of chest pains, she was diagnosed with hypertension and annotations indicate that "medical compliance stressed" (Exhibit 11F/3).

(R. 27-28) (emphasis added).

After recounting her medical treatment, the ALJ noted that Jackson had "no significant restrictions" from her treating physicians; she had been treated "exclusively with medications;" and her medications were "relatively conservative." (R. 29).

Although the ALJ clearly considered Jackson's heart condition, the ALJ did not specifically consider whether she met Listing 4.04. However, the court concludes that any error by the ALJ is harmless because Jackson has failed to demonstrate that she meets or equals the Listing. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis in the Social Security case context); *Howard v. Soc. Sec. Admin., Comm'r.*, 566 F. App'x 784, 787 (11th Cir. 2014) ("even if the AC improperly failed to consider some of [the plaintiff's] additional evidence, any error was harmless because we have independently reviewed all submitted evidence.").

It is undisputed that on January 5, 2008, Jackson was admitted to the Southeast Alabama Medical Center complaining of chest pain. (R. 353). At that time, she was diagnosed with "ST elevation inferior myocardial infarction, *presumed secondary to coronary spasm from severe hypertension*." (R. 353). Treatment notes indicate that Jackson suffered no further episodes "once her blood pressure was improved." (*Id*.) Although Jackson was admitted for an "acute inferior myocardial infarction," at her discharge, she was diagnosed with severe hypertension. (R. 355). "As best we can tell, she has a long history of medical noncompliance with regard to her medicines - using Clonidine just intermittently and based on how she felt." (R. 353). Prior to this incident, Jackson reported no other cardiovascular complaints or episodes. (R. 355).

After her discharge on January 8, 2008, Jackson underwent a heart catheterization on January 18, 2008. Her left main coronary artery was normal. The left anterior descending coronary artery had a "proximal 50% stenosis" on the first diagonal. The right coronary artery had a "60% irregular lesion after the posterior descending artery [which was] a modest

posterolateral artery branch after the 60% stenosis." (R.365). It is based on this test that Jackson argues that she meets or equals Listing 4.04. The Commissioner asserts that the cardiovascular listings require more to determine disability and Jackson cannot meet the requirements of the introductory paragraphs of Listing 4.00 and 4.04.

While Listing 4.04C1d addresses ischemic heart disease, coronary artery disease and the need for angiographic evidence demonstrating "50 percent or more narrowing of at least two nonbypassed coronary arteries," the Commissioner is correct that more is required to meet Listing 4.04. For example, the introductory paragraph of Listing 4.04 Ischemic heart disease requires "symptoms due to myocardial ischemia, as described in 4.00E3-4 .00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment). . ." *See* 20 C.F.R. Subpart P, Appendix 1. Listing 4.04. The Listing requires the claimant to present "objective evidence, as described under 4.00C that . . . symptoms are due to myocardial ischemia." *Id.,* at Listing 4.00E9a. In this case, Jackson's 2008 symptoms were subsequently determined to be the result of "coronary spasm from severe hypertension." (R. 353-55, 457-58).

Moreover, the plaintiff's longitudinal medical records do not contain the requisite description of treatment for cardiovascular disability. *See* 20 C.F.R. Subpt P, App. 1, Listing 4.00.2. ("The Listings in this section describe cardiovascular impairments based on symptoms, signs, laboratory finding, response to a regimen of prescribed treatment and functional limitations.). The Listing requires "[a] longitudinal clinic record covering a period of not less than 3 months of observations and treatment is usually necessary," and the Commissioner "will usually need a longitudinal clinical record to assess the severity and expected duration" of the

heart condition.  *Id.*, at Listing 4.00B1 and 4.00B2.

The medical record in this case does not provide the longitudinal support necessary to meet the Listing.  For example, after the 2008 episode, a chest x-ray on January 11, 2009 revealed a "normal heart."  (R. 434).  On April 1, 2009, Jackson presented to the Southeast Cardiology Clinic at which time her blood pressure was better, she had no other specific complaints, and she "overall appears to be doing fairly well from a cardiovascular standpoint." (R.439).  On February 5, 2010, she returned to the Cardiology Clinic complaining of shortness of breath, fluid retention and decreased exercise tolerance.  (R. 440).  An electrocardiogram demonstrated a "normal sinus rhythm." (R. 440).

On July 14, 2011, Jackson presented to the Southeast Alabama Medical Center complaining of right arm numbness.  (R. 452-53).  An echocardiogram revealed an improved and "normal ejection fraction."  (*Id.*).  An EKG also revealed a "normal sinus rhythm."  (R. 457). Her cardio isoenzymes were normal, and she was not in congestive heart failure. (R. 457-58).  "Her right arm numbness right now is not accompanied by shortness of breath, and her troponins, as well as the EKG, did not show any supporting evidence for an acute coronary syndrome."  (R. 452-53).

Finally, Listing 4.04 requires an exercise tolerance test (ETT) or "in the absence of a timely exercise tolerance test, or a timely normal drug-induced stress test, an MC preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual."   *See* 20 C.F.R. Subpt P, App. 1, Listing 4.04C.  There is no evidence in the record of an exercise tolerance test,

nor has the plaintiff presented any evidence that a medical professional has concluded that she should not undergo one. The burden of proof initially lies with the plaintiff. "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988). This failure of proof regarding the exercise tolerance test is sufficient for the court to conclude that the plaintiff does not meet or equal Listing 4.04. The 2008 angiographic evidence, by itself, is simply insufficient under the regulations to meet Listing 4.04. Consequently, based on its review of the record, the court finds that the ALJ's failure to consider whether Jackson met Listing 4.04 is harmless error because the medical record does not demonstrate that Jackson satisfies the requirements of the Listing.

## CONCLUSION

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is due to be affirmed. Thus, this case will be dismissed with prejudice.

A separate order will issue.

Done this 20th day of December, 2016.

                                              /s/Charles S. Coody
                                              CHARLES S. COODY
                                              UNITED STATES MAGISTRATE JUDGE